UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>LK TRANSPORTATION, INC., a California Corporation; MARIO PRADO, an individual; JOHN SHOWER, an individual; JOHN RITCHIE, an individual; SANDRA RITCHIE, an individual, and Does 1 through 10, inclusive,<br><br>         Defendants. | No.  2:13-cv-01453 JAM EFB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Plaintiff Travelers Property Casualty Company of America's ("Plaintiff") Motion for Summary Judgment (Doc. #17) and Defendants LK Transportation, Mario Prado, John Shower, John Ritchie, and Sandra Ritchie's (collectively "Defendants") Cross-Motion for Summary Judgment (Doc. #23).  Defendants oppose Plaintiff's motion (Doc. #24) and Plaintiff opposes Defendants' motion (Doc. #25).[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February, 19, 2014.

1

I.   PROCEDURAL AND UNDISPUTED FACTUAL BACKGROUND

On April 19, 2010, Larry Kampmeinert, the owner of Defendant LK Transportation ("LK"), received a phone call from Descor Inc. ("Descor") arranging for LK to go to the Yuba City area, pick up a construction trailer owned by Descor ("the Trailer"), and move it back to Sacramento for a fee. JSF at 5. A tractor was required to move the Trailer on the highway. JSF at 7. Mr. Kampmeinert contacted Mario Prado ("Prado"), who was an employee of LK. JSF at 8. Mr. Kampmeinert made arrangements for Prado to drive a tractor owned by LK ("the Tractor") from the LK yard in Sacramento to Yuba City to pick up the Trailer. JSF at 8. While Prado was driving the Tractor to Yuba City to pick up the Trailer and transport it to Sacramento, he was involved in a two-vehicle accident. JSF at 10. The driver of the other vehicle, Martha Shower, died at the scene of the accident. JSF at 12. Her passengers, John Shower and John Ritchie, claim to have been injured during the accident. JSF at 13. When the accident occurred, Prado had not yet arrived at Descor's work site and had not yet begun to haul the Trailer. JSF at 13. Prado and the Tractor were on the road only because Prado was on his way from Sacramento to pick up and transport the Trailer. JSF at 15.

At the time of the accident, the Tractor and Prado were insured under a policy ("the Northland Policy") issued by Northland Insurance Company, an affiliate of Plaintiff. JSF at 16. The Northland Policy provided liability coverage in the amount of $1 million for LK for any accident involving the Tractor and for Prado while driving the Tractor. JSF at 18, Ex. A. At the time of the accident, Descor was the named insured in

2

a policy issued by Plaintiff Travelers (the "Travelers Policy"), which provided liability coverage of $1 million per accident. JSF at 24, Ex. C.  The Trailer was a "covered auto" under the Travelers Policy, but neither LK nor Prado were named insureds under the Travelers Policy, nor was the Tractor listed as an insured vehicle.  JSF at 27-28.

On November 4, 2010, Defendants John Shower, John Ritchie, and Sandra Ritchie sued Prado and LK in Sacramento County Superior Court.  JSF at 20.  LK tendered the lawsuit to Northland, which paid its $1 million policy limits to John Shower and John Ritchie in partial settlement of their claims.  JSF at 23.  The settlement did not include a release of LK and Prado, or a dismissal of the action.  JSF at 23.  However, the settlement did include a "covenant not to execute," which limits any further recovery by Shower and Ritchie to the amount they are entitled to recover from any other liability policy that provides coverage for the accident.  JSF at 23.  On June 6, 2013, LK and Prado tendered the lawsuit to Travelers and requested that Travelers defend and indemnify them under the Travelers Policy.  JSF at 30.

On July 19, 2013, Plaintiff Travelers filed the Complaint (Doc. #1) in this Court.  The Complaint includes the following causes of action for declaratory judgment: (1) no coverage exists for the accident under the Travelers Policy; and (2) no duplicate coverage is available under the Travelers Policy, as $1 million has already been paid out under the Northland Policy.  The Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1), as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## II. OPINION

### A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[M]ere disagreement or bald assertion that a genuine issue of material fact exists will not preclude the grant of summary judgment". Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-

4

moving party]." Anderson, 477 U.S. at 252. This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

B. Discussion

1. LK's Tractor as "Hired" or "Borrowed"

Defendants argue that coverage exists under the Travelers Policy because Prado and LK were using a "covered auto" at the time of the accident. Defs.' Mot. at 7. Specifically, Defendants argue that the Tractor was a "hired" or "borrowed" auto under the terms of the Travelers Policy, because the Tractor was being used for Descor's business purposes. Defs.' Mot. at 7. Plaintiff responds that Descor did not hire or borrow the Tractor because it did not exercise "dominion and control" over the Tractor. Pl.'s Opp. at 3.

Under California insurance law, a vehicle is "hired" or "borrowed" by an insured only if the insured exercises dominion and control over the vehicle. Am. Int'l Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co., 181 Cal.App.4th 616, 630-31 (2010); see also City of Los Angeles v. Allianz Ins. Co., 125 Cal.App.4th 287, 296 (2004) (noting that "the *sine qua non* of borrowing a vehicle is the exercise of dominion and control over the vehicle"). There is some disagreement as to whether physical possession of the vehicle by the insured is required to find that the vehicle has been "hired" or "borrowed." Compare Am. Int'l Underwriters, 181 Cal.App.4th at 631 (holding that "possession

5

1   *and* control" are required for a vehicle to be a "hired auto")
2   (emphasis added), with Gurevich v. Hartford Cas. Ins. Co., 2013
3   WL 2147452, at 4* (N.D. Cal. May 15, 2013) (holding that "hiring
4   an auto . . . requires temporary possession of the vehicle, *or* at
5   least dominion and control over the vehicle") (emphasis added).
6   However, the mere fact that a vehicle is being used for the
7   insured's business purposes, without more, is insufficient to
8   establish that the vehicle has been "hired" or "borrowed."
9   Allianz, 125 Cal.App.4th at 295 (noting that the plaintiff's use
10  of a vehicle "for its own purposes" is "not enough to constitute
11  'dominion and control' over" the vehicle).

12       Descor did not exercise "dominion and control" over the
13  Tractor.  Descor hired LK to move the Trailer and it had a
14  contractual right to the removal and relocation of the Trailer by
15  LK.  JSF at 5 (stipulating that Descor "arrang[ed] for LK
16  Transportation to go to the Yuba City area, pick up a
17  construction trailer owned by Descor, and move it back to
18  Sacramento for a fee").  However, Descor had no right to control
19  how LK carried out its obligation to move the Trailer.  For
20  example, LK had the legal right to use an alternative vehicle
21  other than the Tractor (including a different tractor) to haul
22  the Trailer.  Likewise, LK and Prado had the right to use the
23  Tractor for other purposes (personal and business alike), as long
24  as the Trailer was moved in accordance with the terms of LK's
25  agreement with Descor.  The fact that Prado was driving the
26  Tractor solely for the purpose of hauling the Trailer is
27  immaterial: it is the legal right to control the Tractor that
28  matters, and LK never relinquished that right.  Accordingly, the

1   Tractor driven by Prado and LK was not a "hired" or "borrowed"
2   auto under the Travelers Policy.
3       In this way, the present case is similar to City of Los
4   Angeles v. Allianz Ins. Co., 125 Cal.App.4th 287, 296 (2004).  In
5   Allianz, the City of Los Angeles sold treated sewage to a
6   composting company.  Allianz, 125 Cal.App.4th at 289 (2004).  The
7   composting company, in turn, hired MSM Trucking, to remove the
8   sewage from the City's property.  Id. at 290.  An MSM employee
9   was injured, while on the City's property, when he was loading
10  the sewage into his MSM truck.  Id. at 290.  Despite the detailed
11  procedures that the City required MSM to follow in loading the
12  sewage, the court found that the MSM truck was not a "hired auto"
13  covered by the City's insurance policy.  Id. at 295.  The court
14  noted that "MSM did not put its truck in the service of the City;
15  it brought its truck on to the City's property to perform a
16  hauling contract it had entered into in furtherance of its own
17  business interests."  Id. at 295.  The Court held that, as "the
18  truck was at all times being used to accomplish MSM's business
19  purposes," the City never exercised "dominion and control" over
20  the vehicle.  Id. at 295.  Here, just as in Allianz, the Tractor
21  was merely used in furtherance of LK's own business interests,
22  and Descor never exercised control over the vehicle.
23      Defendants' reliance on Allianz is misplaced.  Defendants
24  argue that Allianz stands for the proposition that a vehicle is
25  "hired" if it is used for the insured's business purposes.
26  Defs.' Mot. at 13.  Defendants quote the following language from
27  Allianz for this proposition: "[T]he *sine qua non* of borrowing a
28  vehicle is the exercise of dominion and control over the vehicle,

7

1   whether through the use of the vehicle in the pursuit of one's
2   own purposes or through possession and custody of the vehicle."
3   Defs.' Mot. at 13 (quoting Allianz, 125 Cal.App.4th at 296).
4   However, in the same paragraph, the court clarifies that an
5   insured must have "use of the [vehicle] for its own purposes, *to
6   the exclusion of its owner*." Allianz, 125 Cal.App.4th at 296
7   (emphasis added). Thus, use of an auto for the insured's
8   business purposes must be exclusive to establish that the auto
9   has been "hired." The "exclusive use" requirement is merely an
10  alternative form of stating the "dominion and control"
11  requirement. Moreover, elsewhere in the opinion, the Allianz
12  court unequivocally states that an insured's use of a vehicle
13  "for its own purposes" is "not enough to constitute 'dominion and
14  control' over" the vehicle. Allianz, 125 Cal.App.4th at 295.
15       Defendants' reliance on Travelers Indem. Co. v. Swearinger,
16  169 Cal.App.3d 779 (1985) is similarly unavailing. In
17  Swearinger, member families of a school district volunteered to
18  host out-of-town students who were visiting for a basketball
19  tournament. Swearinger, 169 Cal.App.3d at 782. Host families
20  were required to provide transportation to and from the school
21  for the visiting students. Id. at 782. A visiting student was
22  injured in a car accident while riding in her host family's car.
23  Id. at 782. The court found that the school district had
24  "borrowed" the host family's car, rejecting the insurer's
25  argument that the school district did not have dominion and
26  control over the car. Id. at 785. Defendants argue that, just
27  as the host family's car was "borrowed" because it was used for
28  the school district's purposes, the Tractor was "borrowed"

8

because it was used for Descor's purposes. Defs.' Mot. at 8-9. However, Swearinger is readily distinguishable from the case at hand. In Swearinger, the "borrowed" car was used exclusively for the purposes of the school district. Swearinger, 169 Cal.App.3d at 782. The host family received no tangible benefit from its use. Here, the Tractor was used for the purposes of LK, and any benefit to Descor from its use was secondary. This distinction between exclusive use for the insured's purposes and non-exclusive use for the owner's purposes has repeatedly been recognized by California courts. See Allianz, 125 Cal.App.4th at 295 ("In Swearinger, the vehicle was used for one purpose – the school district's purpose of transporting guest students, and the district was therefore a borrower. Here, the MSM truck was used for MSM's purposes, and the City's use in loading it was, at most, secondary."); Employers Ins. Co. of Wausau v. California Capital Ins. Co., 2011 WL 5997009 (Cal. Ct. App. Nov. 30, 2011) (noting that, "in contrast [to Swearinger], the GMC truck was being used for the dual purpose of serving the business interests of both" the insured and another party). Furthermore, to the extent that Swearinger diminished the importance of "dominion and control" in borrowing a vehicle, it has since been rejected. Am. Int'l Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co., 181 Cal.App.4th 616, 629-31 (2010) ("declin[ing] to adopt the Swearinger view" because "the Swearinger decision is based on an inadequate definition of 'borrow'").

   For all of these reasons, the Tractor was not "hired" or "borrowed" by Descor. Accordingly, Prado's and LK's use of the Tractor cannot provide a basis for coverage under the Travelers

9

1  Policy.

2           2.   <u>LK and Prado's "Use" of Descor's Trailer</u>

3      Plaintiff argues that no coverage exists under the Travelers
4  Policy because "the accident . . . did not result from the use of
5  Descor's trailer and . . . did not occur while LK or Prado was
6  using the trailer."  Pl.'s Mot. at 6.  Plaintiff contends that
7  the proper standard for causation in this case is the
8  "predominating cause/substantial factor" test.  Pl.'s Mot. at 6.
9  Defendants dispute Plaintiff's conclusion that the accident did
10 not result from Prado's and LK's use of the Trailer, and urge the
11 Court to use the "minimal causation" test.  Defs.' Opp. at 7.

12     Under California law, an accident "arises out of the use" of
13 a vehicle only if there is "some minimal causal connection
14 between the vehicle and [the] accident."  <u>State Farm Mut. Auto.</u>
15 <u>Ins. Co. v. Partridge</u>, 10 Cal.3d 94, 101 (1973).  The California
16 Supreme Court, in <u>Partridge</u>, noted that the phrase "arising out
17 of the use" has "broad and comprehensive application, and affords
18 coverage for injuries bearing almost any causal relation with the
19 vehicle."  <u>Partridge</u>, 10 Cal.3d at 100.  However, the <u>Partridge</u>
20 court declined to precisely define the causation requirement.
21 <u>Partridge</u>, 10 Cal.3d at 100 n.7.  After <u>Partridge</u>, "a majority
22 of California decisions have applied the 'predominating
23 cause/substantial factor test' in order to determine whether the
24 'minimal causal connection' requirement has been met."  <u>Oregon</u>
25 <u>Mut. Ins. Co. v. Nat'l Gen. Ins. Co.</u>, 2010 WL 1343529 (E.D. Cal.
26 Apr. 5, 2010) <u>aff'd</u>, 436 F. App'x 802 (9th Cir. 2011); see <u>State</u>
27 <u>Farm Mut. Auto. Ins. Co. v. Grisham</u>, 122 Cal.App.4th 563, 566
28 (2004) (noting that decisions, subsequent to <u>Partridge</u>, "have

1    largely opted for the predominating cause/substantial factor
2    test"). The Ninth Circuit has adopted this approach, holding
3    that a vehicle's "operation, movement, maintenance, loading, or
4    unloading must be a substantial factor or predominating cause of
5    the claimant's injury." Oregon Mut. Ins. Co. v. Nat'l Gen. Ins.
6    Co., 436 F. App'x 802, 803 (9th Cir. 2011).
7         The Travelers Policy provides coverage for "all sums an
8    'insured' legally must pay as damages" for injuries or damage
9    "caused by an accident and resulting from the ownership,
10   maintenance or use of a covered auto." JSF, Ex. C at 20. The
11   Travelers Policy defines "insured" as Descor and "anyone else
12   while using with your permission a covered auto." It is
13   undisputed that the Trailer was a "covered auto" under the
14   Travelers Policy. JSF at 28. Accordingly, for coverage to exist
15   under the Travelers Policy, the "operation, movement,
16   maintenance, loading, or unloading" of the Trailer by Prado and
17   LK must have been a "substantial factor or predominating cause of
18   the claimant's injury." Oregon Mut. Ins. Co. v. Nat'l Gen. Ins.
19   Co., 436 F. App'x 802, 803 (9th Cir. 2011). Defendants cannot
20   show that this is the case. Defendants' argument that the
21   accident arose out of the "movement" of the Trailer is simply
22   wrong. Defs.' Opp. at 11. Although Prado and LK had the
23   intention of eventually moving the Trailer, it is undisputed that
24   the Trailer had not been moved at the time of the accident. JSF
25   at 13-14. Finding that an accident arose from the movement of a
26   motionless vehicle would defy common sense and the laws of
27   physics.
28        Defendants' contention that the Court should apply the

"completed operations" rule to the "process of moving" the Trailer is not persuasive. The "completed operations" rule states that the "unloading" of a vehicle includes "all the operations" required to "effect a completed delivery" of the cargo. Entz v. Fid. & Cas. Co. of New York, 64 Cal.2d 379, 382, 412 P.2d 382 (1966). Defendants argue that the "'movement' of the trailer should encompass all operations which are part of effecting a complete delivery of the trailer from Yuba City to Sacramento." Defs.' Opp. at 11. However, the "completed operations" doctrine only pertains to the "delivery" of goods or cargo. Entz, 64 Cal.2d at 382. Thus, even if the Trailer qualified as goods or cargo, the "completed operations" rule would not apply to this case because Prado and LK were not "unloading" or "delivering" the Trailer at the time of accident: indeed, the Trailer had not yet been "loaded" onto the Tractor. JSF at 13.

   Defendants' contend that the cases cited by Plaintiff which establish the "predominating cause/substantial factor" test are factually distinguishable from the case at bar. Defendants argue that the "predominating cause/substantial factor" test was created by California courts "mainly because parties were attempting to unrealistically shoe-horn clearly non-auto accident losses into automobile liability policies." Defs.' Opp. at 11. Defendants note that several of the cases cited by Plaintiff for the "predominating cause/substantial factor" test involved sexual assaults and dog bites that merely happened to occur in an automobile. Defs.' Reply at 10. However, the unique factual context of these cases does not provide sufficient justification

12

for limiting application of the "predominating cause/substantial factor" test to non-auto accident cases. Whether the injury arises from the bite of man's best friend or from an auto accident, the importance of a causal limitation on liability remains constant. To hold otherwise would "convert auto liability policies into general liability policies." State Farm Mut. Auto. Ins. Co. v. Grisham, 122 Cal.App.4th 563, 567 (2004).

Defendants' argument that the Court should use the "minimal causation" test rather than the "predominating cause/substantial factor" test is without merit. Defendants primarily rely on two cases in which the Ninth Circuit appeared to use the "minimal causation" test. Defs.' Opp. at 8 (citing State Farm Mut. Auto. Ins. Co. v. Davis, 937 F.2d 1415, 1419 n.3 (9th Cir. 1991) and Pac. Employers Ins. Co. v. Domino's Pizza, Inc., 144 F.3d 1270, 1274 (9th Cir. 1998)). However, as discussed above, the Ninth Circuit has since adopted the "predominating cause/substantial factor" test. Oregon Mut. Ins. Co. v. Nat'l Gen. Ins. Co., 436 F. App'x 802, 803 (9th Cir. 2011). Furthermore, a previous interpretation of California law by the Ninth Circuit is "only binding in the absence of any subsequent indication from the California courts that [the] interpretation was incorrect." Munson v. Del Taco, Inc., 522 F.3d 997, 1002 (9th Cir. 2008). As the "majority of California decisions have applied the 'predominating cause/substantial factor test,'" the Court need not use the "minimal causation" test. Oregon Mut. Ins. Co. v. Nat'l Gen. Ins. Co., 2010 WL 1343529 (E.D. Cal. Apr. 5, 2010) aff'd, 436 F. App'x 802 (9th Cir. 2011).

Defendants' reliance on other tractor-trailer cases is

13

1  misplaced.  Each of the cases cited by Defendants involved a
2  trailer that was physically connected to a tractor, and thus
3  formed a single unit.  Defs.' Mot. at 21 (citing Mission Ins. Co.
4  v. Hartford Ins. Co., 155 Cal.App.3d 1199 (1984) and Smith v.
5  Travelers Indem. Co., 32 Cal.App.3d 1010 (1973)).  In the present
6  case, it is undisputed that the Trailer had not yet been
7  connected to the Tractor when the accident occurred.  JSF at 13.
8  As the Tractor and the Trailer remained two separate units,
9  Mission and Smith are not helpful to Defendants.
10       Defendants also urge the Court to construe the Travelers
11 Policy "as broadly as possible," due to the importance of giving
12 "monetary protection to that ever changing and tragically large
13 group of persons who while lawfully using the highways themselves
14 suffer grave injury."  Defs.' Mot. at 22 (quoting Interinsurance
15 Exch. of Auto. Club of S. Cal. v. Ohio Cas. Ins. Co., 58 Cal. 2d
16 142, 153 (1962).  This public policy argument is not enough to
17 carry the day.  When interpreting the terms of a contract and
18 applying established case law, fairness and impartiality are the
19 beacons of light that guide the Court.  The Court may not place
20 the proverbial "thumb on the scale" for one civil litigant over
21 another, absent explicit direction by the legislature or a higher
22 court.  The case relied upon by Defendants concerns a California
23 "automobile financial responsibility" statute, and has no
24 applicability in a contract interpretation case such as this.
25 Interinsurance Exch., 58 Cal.2d at 153.  As discussed above,
26 California courts have already determined the proper scope of
27 automobile insurance policies, and the Court must interpret the
28 Travelers Policy accordingly.  See, e.g., Bartlome v. State Farm

Fire & Cas. Co., 208 Cal.App.3d 1235, 1239 (noting that, if "a term in an insurance policy has been judicially construed, . . . the judicial construction of the term should be read into the policy unless the parties express a contrary intent").

For all of these reasons, the accident did not result from the use of the Trailer, and therefore was not covered by the Travelers Policy.

### 3. Anti-Stacking Provision

Plaintiff argues that coverage under the Travelers Policy is barred by the "anti-stacking" provisions that appear in both the Travelers Policy and the Northland Policy. Pl.'s Mot. at 9. Plaintiff notes that Northland – an affiliate of Travelers – has already paid out $1 million under the Northland Policy, and argues that no further coverage is available under the Travelers Policy. Pl.'s Mot. at 9. Defendants respond that the "anti-stacking" provisions do not apply because the Travelers Policy and the Northland Policy were not issued to the same named insured. Defs.' Opp. at 4. Plaintiff does not address this argument in its reply.

The "anti-stacking" provisions provide as follows: "If this Coverage Form and any other Coverage Form or policy issued *to you* by us or any company affiliated with us apply to the same 'accident,' the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy." JSF, Ex. C at 27 (emphasis added). Accordingly, this limitation only applies when two policies are issued to the same named insured. Here, the named insured under the Travelers

Policy was Descor, Inc. JSF, Ex. A at 3. Conversely, the named insured under the Northland Policy was LK Transportation, Inc. JSF, Ex. C at 2. Therefore, the "anti-stacking" provisions do not block duplicate coverage under the Travelers Policy and the Northland Policy. Nevertheless, as discussed above, the accident was not covered by the Travelers Policy.

### III. ORDER

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Cross-Motion for Summary Judgment:

IT IS SO ORDERED.

Dated: March 13, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE